a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| JABA PATARAIA, Petitioner | CIVIL DOCKET NO. 1:25-CV-01188 SEC P |
| VERSUS | JUDGE DRELL |
| KRISTI NOEM ET AL, Respondents | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 filed by Petitioner Jaba Pataraia ("Pataraia"). Pataraia seeks his release from detention at the Winn Correctional Center in Winnfield, Louisiana.

Because Pataraia does not establish his entitlement to release, the Petition should be DENIED.

I. Background

Pataraia is a citizen of Georgia and Russia. ECF No. 18 at 6. He alleges that he entered the United States on June 6, 2024, "after fleeing persecution on the basis of his political opinion in opposition of the Russian invasion of Ukraine." ECF No. 1 at 2.

On September 23, 2024, Pataraia was adjudicated inadmissible under sections 212(a)(6)(A)(i) and (a)(7)(A)(i)(I) of the Immigration and Naturalization Act ("INA"). The immigration judge denied asylum, but granted withholding of removal to Georgia and Russia under INA § 241(b)(3). ECF No. 1-2 at 4-7. The removal order became

1

final when the Board of Immigration Appeals dismissed the appeal on February 6, 2025.  ECF No. 1 at 3.

The Government submitted requests for third country removal to Armenia, Kazakhstan, and Azerbaijan on February 13, 2025, and follow-up requests on April 3 and 25, 2025.  ECF No. 18 at 6, 14-1 at 1.  Although no response was received from Armenia or Azerbaijan, the Kazakhstan Embassy acknowledged receipt of the request on May 14, 2025, and advised that it was under consideration.  *Id.*

On August 20, 2025, Enforcement and Removal Operations ("ERO") in New Orleans sent a request to ERO Headquarters for assistance with third country removal.  *Id.* at 2.  As of September 3, 2025, ERO has not received a decision from Armenia, Kazakhstan, or Azerbaijan as to whether they will accept Pataraia.

A custody status review was conducted on May 14, 2025.  ICE determined that Pataraia should remain detained because he failed to demonstrate that he would not pose a flight risk if released, and his removal was likely to occur in the reasonably foreseeable future.  ECF No. 1-4 at 2.  The Government asserts that Pataraia was served with an interview notice for a custody review on August 21, 2025.  ECF No. 14 a 14.

Pataraia raises three claims for relief: (1) his detention violates the INA, 8 U.S.C. § 1231(a)(6), and the substantive due process clause of the Fifth Amendment; (2) his detention violates the procedural due process clause of the Fifth Amendment; and (3) his detention violates the Administrative Procedures Act ("APA") and the *Accardi* doctrine.  ECF No. 1 at 25-32.

II.    Law and Analysis

    A.    Pataraia's detention is lawful.

ICE has detention authority over individuals like Pataraia with a final order of removal. *See* 8 U.S.C. § 1231(a)(1)(B)(i)–(ii).  Section 1231(a)(1)(A) provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."  *Id.* at § 1231(a)(1)(A); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021).  The removal period begins on the latest of three dates: (1) the date the order of removal becomes "administratively final"; (2) the date of the final order of any court that entered a stay of removal; or (3) the date on which the alien is released from non-immigration detention or confinement. *Id.* at § 1231(a)(1)(B).  Pataraia's removal period began when his order became final on February 6, 2025.  ECF No. 14-1 at 1.

"A special statute authorizes further detention if the Government fails to remove the alien during those 90 days."  Specifically, § 1231(a)(6) permits detention beyond 90 days, for a period reasonably necessary to bring about that alien's removal from the United States.  *See Zadvydas v. Davis*, 533 U.S. 678, 682, 701 (2001).  This post-removal-period detention statute applies to certain categories of aliens who have been ordered removed, including inadmissible aliens like Pataraia.  *Id.* (citing 8 U.S.C. § 1231(a)(6)).

In *Zadvydas,* the United States Supreme Court determined that detention for up to six months is presumptively reasonable.  *Id.*  Thereafter, if an alien provides good reason to believe that there is no significant likelihood of removal in the

reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing. The six-month presumption does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future. *See Zadvydas,* 533 U.S. at 701.

Following the Supreme Court's decision in *Zadvydas*, the Government enacted regulations to meet the criteria established by the Court to prevent indefinite detention. *See* 8 C.F.R. § 241.4. Pursuant to those regulations, a detained alien is entitled to review of his custody status prior to the expiration of the removal period, § 241.4(k)(1), and at annual intervals thereafter, § 241.4(k)(2), with the right to request interim reviews not more than once every three months in the interim period between annual reviews. *See* 8 C.F.R. § 241.4(k)(2)(iii). The regulations require that the reviewing ICE officials consider several factors when determining whether to release an alien or continue his detention pending removal from the United States. *See* 8 C.F.R. § 241.4(f).

Pataraia has been in post-removal order detention for almost eight months.[1] This Court and others have found longer periods were not unreasonable. *See Barrera*

---

[1] The eight months in post-removal order detention includes the 90-day removal period. However, it is noted that some courts have calculated the presumptively reasonable 6-month period from the date the 90-day removal period ends. *See Hersh v. U.S. ex rel. Mukasey*, 553 F.3d 743, 757 (5th Cir. 2008) (detention for a reasonable time is permissible, which *Zadvydas* "decreed to be presumptively six months . . . after the ninety day removal period"); *Olowu v. Kelly*, 17-cv-00469, 2017 WL 8181530, at *2 (W.D. Tex. Sept. 1, 2017) ("The presumptively reasonable six-month removal period begins after the ninety-day removal period."); *Tekleab*

*Romero v. Cole*, 16-CV-00148, 2016 WL 7041710, at *2 (W.D. La. 2016), *report and recommendation adopted sub nom. Barrera Romero v. Warden, Lasalle Det. Facility*, 2016 WL 7041614, at *2 (W.D. La. 2016) (20 months); *Mancera v. Kreitzman*, 16-CV-89, 2016 WL 1249600, at *4 (E.D. Wis. 2016) (23 months); *Garcia v. Lacy*, 12-CV-3333, 2013 WL 3805730, at *5 (S.D. Tex. 2013) (27 months); *Kim v. Obama*, 12-CV-173, 2010 WL 10862140, at *3 (W.D. Tex. 2012) (18 months).  Therefore, the length of Pataraia's detention alone does not warrant relief.

And although Pataraia asserts that his detention "has no end in sight" (ECF No. 18 at 5), that is not the case.  If Kazakhstan—or Armenia or Azerbaijan—grants the Government's request, Pataraia will be removed, bringing his detention to an end.  Although the Government has not received a response from Armenia or Azerbaijan, Kazakhstan acknowledged receipt of the request for removal and is considering the request.  ECF No. 14-1 at 1.  Pataraia's claim that attempts to secure travel documents "have failed" (ECF No. 1 at 9) is conclusory; the attempts are ongoing.  *See Andrade v. Gonzalez*, 459 F.3d 538, 543-44 (5th Cir. 2006) (conclusory statements were insufficient to establish a petitioner's initial burden that removal was not foreseeable).  Pataraia has offered no good reason to believe that Kazakhstan will not grant the request and issue travel documents—thereby facilitating his removal—in the reasonably foreseeable future.

---

*v. Kelly*, 17-cv-00267, 2017 WL 11699662, at *2 (W.D. Tex. June 19, 2017) (same).  Under those formulas, the presumptively reasonable period would not yet have expired.

B.    <u>Pataraia has received due process regarding third country removal.</u>

Pataraia assert that his continued detention "without notice of whether and to which countries ICE is actually attempting to remove him, so that he may contest such removal, violates his procedural due process rights."  ECF No. 1 at 29.    But Pataraia acknowledges that "he has indeed been provided with notice of intended removal" to Armenia, Azerbaijan, and Kazakhstan.  ECF No. 18 at 12.  Therefore, he can "contest such removal."

Although Pataraia asserts that the Government has failed to "put forward *additional* prospective third countries" to which it may seek to remove him (ECF No. 18 at 12), there is no evidence that the Government has attempted or is attempting to remove him to any countries other than Armenia, Azerbaijan, and Kazakhstan. Accordingly, there has been no due process violation.

C.    <u>Pataraia fails to state a viable claim under the APA and the *Accardi* Doctrine.</u>

The APA permits review only of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  The APA has been applied to some aspects of immigration proceedings, but only where the INA is silent.  *See, e.g., Shaughnessy v. Pedreiro*, 349 U.S. 48, 51 (1955); *Garcia Uranga v. Barr*, 20-3162, 2020 WL 4334999, at *7 (D. Kan. July 28, 2020).  Where the INA lays out "a specialized" and "very particularized" procedure, such as for deportation proceedings, the APA does not apply.  *See Marcello v. Bonds*, 349 U.S. 302, 308-09 (1955).

6

The INA regulations are not silent regarding post-order custody review, and they outline specific procedures for aliens subject to a final order of removal who are detained after the expiration of the removal period. *See* 8 C.F.R. § 241.4, 241.13. The regulations allow the release of an alien if the Government determines that the alien would not pose a danger to the public or a risk of flight, without regard to the likelihood of the alien's removal in the reasonably foreseeable future. *Id.* Pataraia alleges that he was eligible for release pursuant to what he calls a "Fear-based Grant Release Policy"[2] as of January 31, 2024, because an immigration judge granted him withholding of removal.[3] ECF No. 1 at 31.

Pataraia acknowledges that he received timely custody reviews under the regulatory Post-Order Custody Review ("POCR") process, but he claims they were "cursory and insufficient." *Id.* The Decision to Continue Detention indicates that ICE considered the factors set forth in § 241.4, but decided to maintain physical custody because Pataraia has not demonstrated that, if released, he would not pose a flight risk. ECF No. 1-4 at 2. Additionally, ICE expects to receive travel documents

---

[2] Pataraia refers to several documents, collectively, as a "Fear-based Grant Release Policy," including: "U.S. Department of Justice, Immigration and Naturalization Service Memorandum, Re: Detention and Release during the Removal Period of Aliens Granted Withholding or Deferral of Removal (dated April 21, 2000); ICE Memorandum, Re: Detention Policy Where an Immigration Judge has Granted Asylum and ICE has Appealed (dated February 9, 2004); ERO, Re: Reminder on Detention Policy Where an Immigration Judge has Granted Asylum, Withholding of Removal or CAT (dated March 6, 2012); ICE, Re: Reminder: Detention Policy Where an Immigration Judge has Granted Asylum, Withholding of Removal, or Convention Against Torture Protection, and DHS has Appealed (dated June 4, 2021)." ECF No. 1 at 2, n.1. However, these policies provide guidance while an appeal by DHS is pending. The appeal in Pataraia's case was dismissed February 6, 2025.

[3] Although Pataraia asserts his eligibility for release from January 31, 2024, the immigration judge's order was not issued until September 24, 2024, and the removal order was not finalized until February 6, 2025.

in the reasonably foreseeable future. *Id.* ICE's findings are supported by the fact that Pataraia is inadmissible, and ICE is awaiting a response from third countries. Pataraia does not establish that ICE's review was cursory or insufficient, or that it otherwise violated his due process rights through the custody review process such that he would be entitled to a release from detention. *See Garcia Uranga,* 2020 WL 4334999, at *8; *Ashok v. Price,* 19-CV-00160-PRM, 2019 WL 4702637, at *5 (W.D. Tex. Sept. 26, 2019) ("Only violations of these procedural safeguards [90 and 190-day POCR reviews] would have raised to the level of a procedural due process violation."); *Moses v. Lynch,* No. 15-CV-4168, 2016 WL 2636352, at *4 (D. Minn. Apr. 12, 2016) (holding that in the absence of "some indication . . . that ICE failed to comply with any specific requirements" of established custody-review procedures, petitioner had not demonstrated a violation of his Fifth Amendment right to procedural due process); *Mareya v. Mukasey,* No. 06-CV-4525, 2007 WL 4373012, at *10-13 (D. Minn. Dec. 12, 2007) (finding that when immigration officials reach continued-custody decisions for aliens who have been ordered removed according to the custody-review procedures established in the Code of Federal Regulations, such aliens receive the process that is constitutionally required). Furthermore, there is no final agency action at issue. Whether an alien will be released is reconsidered with each POCR.

III. <u>Conclusion</u>

Because Pataraia does not establish his entitlement to release at this time, IT IS RECOMMENDED that the Petition be DENIED and DISMISSED WITHOUT PREJUDICE.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Thursday, December 11, 2025.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE